UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**CHRISTINA M., on behalf of A.T.M,**

                        **Plaintiff,**                        6:20-CV-6686Sr

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #19.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on September 9, 2016, alleging disability on behalf of her child, age 9, due to attention deficit hyperactivity disorder ("ADHD"). Dkt. #14, pp.217 & 221.

On July 29, 2019, plaintiff and the child appeared and testified at an administrative hearing before Administrative Law Judge ("ALJ"), Andrew J. Soltes. Jr. Dkt. #14, pp.40-82. Plaintiff testified that the child resided with her and the child's

father. Dkt. #14, pp.46-47. The child was 12 years old and had completed 7th grade. Dkt. #14, p.48. He was physically healthy, but had difficulty reading and did not seem to retain information. Dkt. #14, pp. 47 & 51. He also struggled to understand math. Dkt. #14, p.52. He has difficulty maintaining friends because he makes them angry. Dkt. #14, pp.52-53. The child was prescribed medication to help him stay focused. Dkt. #14, p.55. His medication has been increased to try and settle him down so that he can focus on his studies. Dkt. #14, p.57. Plaintiff described the child as "[a]ll over the place" and unable to sit still when his medication wears off by the time he gets home from school. Dkt. #14, p.56. He loses school supplies and requires multiple reminders to get himself ready for school. Dkt. #14, p.63. He is very frustrated and does not want to go to school. Dkt. #14, p.68. When he doesn't have school, plaintiff described the child as very quiet after taking his medication. Dkt. #14, p.58. Plaintiff testified that the child has a hard time staying awake when he gets home from school. Dkt. #14, p.66.

Plaintiff's child likes to play basketball and goes to the recreation center approximately 3 times per week. Dkt. #14, pp.60-61. He plays Fortnite every day and although plaintiff tries to limit his playing time to one hour, he sneaks extra playing time. Dkt. #14, pp.59-60. At home, the child washes dishes, cleans the bathroom, cleans his bedroom, sweeps and cares for his dog. Dkt. #14, p.63. He needs a lot of reminders throughout the day to complete his chores. Dkt. #14, p.63.

The child testified that he enjoys playing basketball with his friends. Dkt. #14, p.73. He has difficulty figuring out equations in math and gets nervous taking tests.

Dkt. #14, p.74. He testified that he was tired because he had stayed up last night watching cartoons on Netflix. Dkt. #14, p.76. He was participating in the Fortnite World Series. Dkt. #14, p.77. His mother gives him his medication every morning. Dkt. #14, p.78.

The ALJ rendered a decision that plaintiff was not disabled on September 18, 2019. Dkt. #14, pp.19-35. The Appeals Council denied review on July 15, 2020. Dkt. #14, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on September 10, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). So long as "substantial evidence supports the ALJ's decision, a court will not remand simply because the evidence also supports an alternate conclusion." *Keough o/b/o Jamt v. Comm'r of Soc. Sec'y*, 18-CV-1065, 2020 WL 4504988, at *3 (W.D.N.Y. Aug. 5, 2020), *quoting Cartagena v. Comm'r of Soc. Sec'y*, 18-CV-245, 2019 WL 4750425, at *4 (W.D.N.Y. Sept. 27, 2019).

An individual under the age of 18 will be considered disabled under the Social Security Act ("Act"), if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner must follow a three-step sequential evaluation to determine whether a child is disabled within the meaning of the Act. 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(a) & (b). If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is severe, *i.e.*, causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three and examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 416.924(d).

To evaluate functional equivalence, the ALJ considers how the child functions in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause marked limitations in two domains or an extreme limitation in

one domain. 20 C.F.R. § 416.926a(a). A child has a marked limitation when the impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(2)(i). A child has an extreme limitation when the impairment or combination of impairments interferes very seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(3)(i).

In the instant case, the ALJ made the following findings with regard to the three-step sequential evaluation: (1) the child had not engaged in substantial gainful activity since the application date of September 9, 2016; (2) the child's ADHD constitutes a severe impairment; and (3) the child's impairment did not meet or medically or functionally equal any listed impairment, and the child was not, therefore, disabled within the meaning of the SSA. Dkt. #14, pp.22-35. More specifically, the ALJ determined that the child exhibited: (1) less than marked limitation in acquiring and using information; (2) marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than marked limitation in ability to care for himself; and (6) no limitation in health and physical well-being. Dkt. #14, pp.27-35.

Plaintiff argues that the ALJ failed to evaluate the medical opinion of school psychologist, Staci Thibodeau, Ph.D., and that this failure warrants remand because her opinion supported a marked limitation in the functional domain of acquiring and using information Dkt. #15-1, pp.13-14. Plaintiff also argues that the ALJ failed to

give appropriate consideration to teacher evaluations indicating that the child had serious and very serious problems in the functional domain of acquiring and using information. Dkt. #15-1, pp.14-31. Specifically, plaintiff argues that Ms. Anthony's observations were consistent with Dr. Brownfield's opinion and based upon her experience as a special education teacher who taught the child core subjects, including math, in seventh grade. Dkt. #15-1, pp.16-17. Plaintiff argues that the ALJ erred when he attributed Ms. Anthony's opinions to the domain of attending and completing tasks, without understanding that plaintiff's symptoms could also affect the domain of acquiring and using information. Dkt. #15-1, pp.17-18. Plaintiff also argues that the ALJ misconstrued observations by the child's fifth grade teacher, Ms. Dunham, as pertaining to the functional domain of attending and completing tasks rather than acquiring and using information. Dkt. #15-1, pp.19-20. Plaintiff argues that the ALJ failed to appropriately consider the level of support the child was receiving or recognize the fact that the child's inability to remain on task for IQ testing was an indication of how his inability to attend and complete tasks also affected his ability to acquire and use information. Dkt. #15-1, pp.27-30. Plaintiff argues that the teacher evaluations, coupled with the child's IQ score of 70, warrant a finding that the child met Listing 112.05. Dkt. #15-1, pp.20-21.

The Commissioner responds that Dr. Thibodeau's evaluation following academic testing does not satisfy the definition of a medical opinion because it does not include judgment about the nature and severity of the child's condition or limitations. Dkt. #17-1, pp.19-21. In any event, the Commissioner notes that the ALJ did discuss

the IQ scores from that evaluation and appropriately noted Dr. Thibodeau's reservations about the accuracy of that testing. Dkt. #17-1, pp.20-21. The Commissioner argues that the ALJ appropriately weighed the evidence from medical source opinions, as well as the child's teachers, to determine that the child exhibited a less than marked limitation in the domain of acquiring and using information. Dkt. #17-1, pp.9-19.

School psychologists are acceptable medical sources, and their opinions are particularly useful when assessing intellectual disabilities. *Kasey G. v. Comm'r of Soc. Sec'y*, 542 F. Supp.3d 190, 195 (W.D.N.Y. 2021). In the instant case, however, NYS Certified School Psychologist, Staci Thibodeau, Ph.D., completed an evaluation, but, unlike *Kasey*, did not proffer an opinion as to the child's capacity to acquire and use information. *See Id.* at 196 (remanding case for the ALJ to consider school psychologists opinion that the child would have difficulty with comprehension, following oral directions, expressing her knowledge verbally, catching careless errors and noticing important details, and following oral directions and information). Dr. Thibodeau conducted a Confidential Psychological Evaluation of the child on June 8, 2017 and June 14, 2017, when the child was in fifth grade. Dkt. #14, pp.333-338. The evaluation included review of the child's academic history and psychological evaluation from May of 2014, when the child was in second grade, which revealed a full scale IQ of 85 on the Wechsler Intelligence Scale for Children ("WISC"). Dkt. #14, p.333-338. Dr. Thibodeau examined the child in two testing sessions to allow for optimal attention, but reported that the child

> was observed, at times, to exhibit an impulsive response style by responding quickly, seemingly without fully examining each item choice. This was particularly apparent during the administration of the WISC-V. Consequently, it is believed that the current evaluation results may be an underrepresentation of his actual skills, particularly as they relate to his cognitive ability.

Dkt. #14, p.334. Although the result of the WISC-V Full Scale Intelligence Quotient was 70, which falls within the Very Low Range, Dr. Thibodeau noted that in addition to displaying an impulsive response style, there was a "significant discrepancy in his performance on some composites comprising the Full Scale IQ." Dkt. #14, p.337. As a result, Dr. Thibodeau advised that the Full Scale IQ "be interpreted with caution as it may not be a true depiction of his abilities." Dkt. #14, p.337. Although the ALJ did not reference Dr. Thibodeau's evaluation as a medical source opinion, the ALJ appropriately noted that the IQ score obtained by Dr. Thibodeau was reported to be somewhat unreliable due to the child's behavior during examination, as well as a discrepancy in his composite scores. Dkt. #14, p.25. Accordingly, the ALJ did not err by failing to evaluate Dr. Thibodeau's evaluation as a medical source opinion or in failing to recognize the results of the WISC-V IQ as valid.

However, the Court does find error in the ALJ's assessment of the child's limitations in the functional domain of acquiring and using information. More specifically, the Court finds that the ALJ erred in attributing limitations observed by plaintiff's teachers under the domain of acquiring and using information to the domain of attending and completing tasks, without sufficient consideration for whether that marked limitation sufficiently affected the child's ability to acquire and use information as well.

The Social Security Regulations recognize that "because the ability to attend and to complete tasks is involved in nearly everything a child does, an impairment(s) that affects this ability may cause limitations in other domains" as well. SSR 09-4P (2009).

> For example, school-age children with AD/HD may have limitations in multiple domains. The effects of inattention and hyperactivity can impede the learning process and affect competence in many areas of life. These effects can result in limitations in the domain of "Acquiring and using information"; for example, by undermining academic performance.

*Id.*

Given that the consultative examiner, Adam Brownfield, Ph.D., was unable to assess the child's intellectual functioning on December 20, 2016, "due to lack of effort on the IQ portion of the evaluation," and given consistent reports from multiple teachers over the course of multiple school years indicating serious and very serious limitations in the functional domain of acquiring and using information, the ALJ's determination that the child's difficulty working without distraction, rather than his cognitive abilities, prevented him from acquiring and using information only begs the question of whether the child's ability to acquire and use information is markedly limited as a result of his ADHD. Moreover, the ALJ's reliance upon the opinion of state agency consultant K. Lieber-Diaz, Psy.D., which was based upon the Dr. Brown's 2016 evaluation, the child's WISC-IV IQ score from 2014; and the child's academic achievement in the 5th grade, did not consider the full record of evidence, which demonstrates increasing gaps and limited academic achievement through the seventh grade despite increasing support. Dkt. #14, pp.272, 279-280, 293, 326, 398, 406 & 419.

During the second half of the child's 7th grade school year, for example, the child ability to read was at a 5th grade level, his written language skills were at a 4th grade level, and his math competence was at a 3rd grade level. Dkt. #14, p.279. Furthermore, the child's teacher Megan Anthony, indicated that the child had a very serious problem comprehending and doing math problems; expressing ideas in written form; recalling and applying previously learned material; and applying problem-solving skills in class discussion. Dkt. #14, p.280. Ms. Anthony also indicated a serious problem understanding school and content vocabulary; reading and comprehending written material; understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; and learning new material. Dkt. #14, p.280. Although a teacher's opinion that a child has limitations within a domain, including notations of serious and very serious problems within a domain, is not necessarily inconsistent with an ALJ's conclusion that those limitations were less than marked, *See, e.g., Candice M. o/b/o L.B. v. Comm'r of Soc. Sec'y*, 20-CV-1076, 2022 WL 624064, at *4 (W.D.N.Y. Mar. 3, 2022) (collecting cases), the Court is not persuaded that the ALJ properly considered the impact of the child's severe impairment upon his ability to acquire and use information.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #15), is granted and the case is remanded and the Commissioner's motion for judgment on the pleadings (Dkt. #17), is denied.

The Clerk of the Court is directed to close this case.


**SO ORDERED.**


**DATED:**     **Buffalo, New York**
               **September 29, 2022**


                                        **s/ H. Kenneth Schroeder, Jr.**
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**